IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| Kelly P., | ) |
|     *Plaintiff*, | ) ) ) ) Case No. 3:23-cv-50094 |
| v. | ) ) Magistrate Judge Lisa A. Jensen |
| Martin O'Malley, Commissioner of Social Security, | ) ) ) |
|     *Defendant*. | ) ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Kelly P. brings this action under 42 U.S.C. § 405(g) seeking reversal or a remand of the decision denying her application for disability insurance benefits.[1] For the reasons set forth below, the Commissioner's decision is affirmed.

**I. Background**

In October 2020, Plaintiff filed an application for disability insurance benefits, alleging a disability onset date of March 9, 2020, because of bipolar disorder, anxiety, depressive moods, severe obsessive-compulsive disorder ("OCD"), remission of lung cancer, and asthma. R. 165, 191. Plaintiff was 32 years old on her alleged onset date.

Following a hearing, an administrative law judge ("ALJ") issued a decision in October 2022, finding that Plaintiff was not disabled. R. 13–30. The ALJ found that Plaintiff had the following severe impairments: bipolar disorder, depression, anxiety, OCD, unspecified personality disorder with borderline traits, history of partial lung resection for carcinoma, asthma, and obesity. The ALJ determined that Plaintiff's impairments did not meet or medically equal a

---

[1] The parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings pursuant to 28 U.S.C. § 636(c). Dkt. 6.

1

listed impairment. The ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) except she can occasionally climb ladders, ropes, or scaffolds. The claimant can have occasional exposure to extreme heat, extreme cold, humidity, dust, gases, odors, fumes, and pulmonary irritants. She can understand, remember, and carry out simple routine instructions. The claimant can use judgment limited to simple work-related decisions, and she can have occasional interaction with supervisors, coworkers, and the general public. She is able to tolerate occasional changes to the work setting.

R. 20. The ALJ determined that Plaintiff was unable to perform any past relevant work, but that there were other jobs that existed in significant numbers in the national economy that she could perform, namely light, unskilled jobs.

After the Appeals Council denied Plaintiff's request for review on February 23, 2023, R. 1, Plaintiff filed this instant action. Dkt. 1.

## II. Standard of Review

A reviewing court may enter judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). If supported by substantial evidence, the Commissioner's factual findings are conclusive. *Id.* Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). "An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021) (quoting *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)). The reviewing court may not "reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [its] judgment for the ALJ's

2

determination so long as substantial evidence supports it." *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

### III. Discussion

Plaintiff challenges the ALJ's decision on several grounds, arguing that the ALJ: 1) failed to analyze the evidence in the record and explain her conclusions in finding Plaintiff not disabled; 2) played doctor in discounting the severity of Plaintiff's conditions; 3) made an RFC determination that was internally inconsistent; and 4) improperly discounted a treating medical source opinion. The Court addresses each argument in turn.

**A. Analysis of the Evidence**

Plaintiff argues that the ALJ failed to analyze the evidence in the record or explain her ultimate conclusions in finding Plaintiff not disabled. According to Plaintiff, she "provided ample evidence of her disability," but the ALJ merely summarized this evidence without any explanation why it was insufficient to find her disabled. Pl.'s Mot. at 7, Dkt. 15. In making this argument, Plaintiff focuses on the ALJ's evaluation of her mental impairments. Specifically, Plaintiff points to her testimony and the records from her treating therapist to argue that "she has at least marked limitations in her ability to maintain attention and focus, her ability to care for herself, and her ability to interact with others." Pl.'s Mot. at 7, Dkt. 15.

When an ALJ denies a claimant's application for disability benefits, the ALJ "must build an accurate and logical bridge from the evidence to [her] conclusion." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). "However, an ALJ need only minimally articulate his or her justification for rejecting or accepting specific evidence of a disability." *Rice v. Barnhart*, 384 F.3d 363, 371 (7th Cir. 2004) (internal quotation marks and citation omitted). Although the ALJ is not required to mention every piece of evidence in the record, the ALJ must explain her "analysis of the

3

evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Butler*, 4 F.4th at 501.

The ALJ has done so here, and Plaintiff's assertion that the ALJ failed to analyze the evidence such that this Court cannot trace the path of the ALJ's reasoning is unavailing. In relation to Plaintiff's mental impairments, the ALJ discussed Plaintiff's reports of obsessive behaviors, difficulty following instructions, a lack of motivation to take care of her personal hygiene, being easily overwhelmed, and social anxiety around others, especially in crowds. In light of this and other evidence in the record, the ALJ found that Plaintiff suffered from several severe mental impairments. However, the ALJ also noted that Plaintiff's mental examinations showed intact attention and concentration and did not indicate any difficulty learning or processing information. R. 26. The ALJ further noted that Plaintiff lived with others, maintained friendships, and reports from her providers generally indicated good eye contact and a neat and clean appearance with no observations of significant difficulty interacting. R. 19, 26. Based on these records and the ALJ's reliance on the state agency psychologists' opinions, the ALJ determined that Plaintiff had only moderate limitations in interacting with others, concentrating, persisting or maintaining pace, and adapting or managing herself. R. 18–19. The ALJ accommodated Plaintiff's moderate limitations by limiting Plaintiff to "carrying out simple routine instructions only with judgment limited to simple work-related decisions. She can also have only occasional, meaning no more than 1/3 of the workday, interaction with supervisors, coworkers, and the general public, with no more than occasional changes to the work setting." R. 26.

In taking issue with the ALJ's evaluation of the evidence, Plaintiff does not argue that the ALJ ignored certain evidence in favor of disability. Instead, Plaintiff takes issue with the ALJ's weighing of the evidence in the record, arguing that the evidence supports marked, as opposed to

moderate, limitations in the above categories of functioning. "The ALJ, however, is not only allowed to, but indeed must, weigh the evidence and make appropriate inferences from the record." *Seamon v. Astrue*, 364 Fed. App'x. 243, 247 (7th Cir. 2010) (unpublished); *see also Gedatus*, 994 F.3d at 901 ("This is not a case where an ALJ ignored evidence contrary to his conclusion. Despite her colorable arguments, we will not reweigh the evidence. [Gedatus] has not shown any reason to think the ALJ's summary or determinations are not supported by substantial evidence."). Moreover, the ALJ relied on the state agency psychologists' opinions in finding that Plaintiff had moderate limitations, noting that Plaintiff's reported difficulties around others supported a moderate limitation in interacting with others, instead of the mild limitation found by the state agency psychologists.[2] *See Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019) (stating that an ALJ's RFC finding that "was more limiting than that of any state agency doctor or psychologist" illustrated "reasoned consideration given to the evidence [the claimant] presented"). Plaintiff does not argue that the ALJ's reliance on the state agency reviewing psychologists' opinions in rendering her decision was improper. She also points to no other medical opinion in the record that evaluated Plaintiff's functional limitations relating to her mental impairments.[3]

---

[2] The state agency psychologists at the initial and reconsideration levels found that Plaintiff suffered from severe mental health impairments that resulted in mild functional limitations in (1) understanding, remembering, or applying information and (2) interacting with others; and moderate limitations in (1) concentrating, persisting, or maintaining pace and (2) adapting or managing oneself. R. 77, 87. The ALJ found these opinions "partially persuasive" because they were generally supported and consistent with the evidence in the record. R. 28. The ALJ adopted nearly all the psychologists' opinions as to Plaintiff's limitations resulting from her mental impairments but included a more stringent limitation for social interaction. The ALJ determined that Plaintiff's reported difficulties around others warranted a moderate, as opposed to a mild, limitation in social functioning and limited Plaintiff to only occasional interaction with others.

[3] As explained in further detail later in this Opinion, although Plaintiff relies on a letter from her treating therapist addressing her mental impairments, the letter did not opine on what Plaintiff could do despite her mental impairments or her impairment-related limitations.

In her opening brief, Plaintiff also argues that the ALJ failed to support her decision that Plaintiff was not disabled because she "uses language such as 'in general' or 'overall evidence' without citing to specifics." Pl.'s Mot. at 14, Dkt. 15. In response, the Commissioner points to the ALJ's citations to specific records in her decision to support the ALJ's conclusions. *See* Def.'s Resp. at 13–14, Dkt. 22 (citing R. 23–26). Plaintiff makes no attempt to respond to this in her reply brief and instead abandons her argument altogether. *See* Pl.'s Reply, Dkt. 26; *see Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) (explaining that failing to respond to an argument in a response brief results in forfeiture). Even if Plaintiff has not forfeited the argument, it is without merit because requiring the ALJ to painstakingly repeat and cite to the medical record throughout her decision would be redundant. *See Warnell v. O'Malley*, 97 F.4th 1050, 1053 (7th Cir. 2024) (rejecting claimant's argument that "the ALJ failed to provide page numbers every time she cited the medical record" because "nothing in our case law instructs ALJs that surviving appellate review requires anything remotely resembling a mandate to type the medical record into a written decision"). The Seventh Circuit has emphasized that ALJs "are subject to only the most minimal of articulation requirements. An ALJ need not address every piece or category of evidence identified by a claimant, fully summarize the record, or cite support for every proposition or chain of reasoning." *Warnell*, 97 F.4th at 1053. The ALJ sufficiently built a logical bridge between her assessment of the evidence and her conclusions such that the Court can trace her reasoning, and as a result, a remand is not warranted on this ground.

**B. Playing Doctor**

Plaintiff also argues that the ALJ's limited evaluation of the evidence relating to her mental impairments at step 3 consists of doctor playing. Accordingly, Plaintiff argues that the ALJ was required to obtain expert testimony to properly evaluate the evidence. Specifically, Plaintiff argues

6

the ALJ's decision to rely on Plaintiff's "ability to maintain some memory, eye contact, and deal with her trusted providers [as] indicative of a less severe condition required a medical analysis." Pl.'s Mot. at 9, Dkt. 15. The Court disagrees.

Both a claimant and an ALJ have duties to prepare a medical record. A claimant has the principal duty to submit evidence relating to the disability claim. 20 C.F.R. § 404.1512(a)(1). An ALJ "has a duty to develop a full and fair record." *Nelms v. Astrue*, 553 F.3d 1093, 1098 (7th Cir. 2009). An ALJ must ensure that the claimant's record contains enough information to assess the claimant's RFC and to make a disability determination. *See* 20 C.F.R. § 404.1512(b); *Skinner v. Astrue*, 478 F.3d 836, 843–44 (7th Cir. 2007).

Here, the ALJ had sufficient evidence to render a determination that Plaintiff was not disabled. In evaluating Plaintiff's mental impairments, the ALJ relied on Plaintiff's testimony, several years of Plaintiff's medical records, opinions from the state agency reviewing psychologists, and reports from two psychological consultative examinations. As stated above, the ALJ largely relied on the state agency psychologists' opinions in determining that Plaintiff had mild and moderate limitations in her mental functioning. Although Plaintiff argues that the ALJ was not qualified to evaluate the waxing and waning nature of her conditions, she does not argue why the state agency reviewing psychologists' opinions are insufficient for the ALJ to make this determination. Additionally, although the ALJ found a moderate, instead of a mild, limitation in social interaction, the ALJ's imposition of a more restrictive limitation alone does not warrant a remand. *See Nicole M. v. Kijakazi*, No. 21 C 6441, 2023 WL 2138767, at *7 (N.D. Ill. Feb. 21, 2023) ("Because an ALJ is not required to adopt any one opinion in full, the ALJ did not play doctor simply by assigning restrictions that did not match the opinion of any specific doctor."). Plaintiff has not shown that an additional medical expert's opinion was necessary, and this Court

finds no error in the ALJ's decision not to call a medical expert to testify at the hearing. *See Nelms*, 553 F.3d at 1098 ("This court generally upholds the reasoned judgment of the Commissioner on how much evidence to gather.").

**C. RFC**

Plaintiff argues that the ALJ's RFC limitation for light work was internally inconsistent. Plaintiff points out that although the ALJ's RFC finding limited Plaintiff to "light work as defined in 20 CFR 404.1567(b)," R. 20, later in her decision the ALJ states:

> Given the totality of the record, the undersigned finds that the claimant is limited to the above-noted residual functional capacity, which limits her to a range of light work, meaning no lifting/carrying any more than 10 pounds, and even weight greater than 10 pounds is limited to no more than 1/3 of the workday.

R. 26.

As Plaintiff points out, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b). Accordingly, Plaintiff argues that the ALJ's restriction to lifting no more than 10 pounds is inconsistent with the determination that she retained the capacity to perform a number of light exertion jobs that by definition require lifting of up to 20 pounds.

The Commissioner, however, argues that "it is clear from the context of the record and decision, as well as the internal inconsistency of the sentence itself, that this is simply a typographical error," and that the ALJ intended to limit Plaintiff to light work as defined by the regulations. Def.'s Resp. at 3, Dkt. 22. This Court agrees.

A claimant's RFC is the maximum work she can perform despite any limitations. 20 C.F.R. § 404.1545(a)(1); SSR 96-8p, 1996 WL 374184, at *2. An ALJ must base a claimant's RFC on all relevant evidence in the record, including the claimant's medical history, medical findings and opinions, reports of daily activities, and the effects of the claimant's symptoms and

8

treatment. 20 C.F.R. § 404.1545(a)(3); SSR 96-8p, 1996 WL 374184, at *5. "Although the responsibility for the RFC assessment belongs to the ALJ, not a physician, an ALJ cannot construct his own RFC finding without a proper medical ground and must explain how he has reached his conclusions." *Amey v. Astrue*, No. 09 C 2712, 2012 WL 366522, at *13 (N.D. Ill. Feb. 2, 2012) (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 352 (7th Cir. 2005)). "Essentially, an ALJ's RFC analysis 'must say enough to enable review of whether the ALJ considered the totality of a claimant's limitations.'" *Jarnutowski v. Kijakazi*, 48 F.4th 769, 774 (7th Cir. 2022) (quoting *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021)).

Here, the ALJ found Plaintiff capable of light work as defined in the regulations when making her RFC determination. R. 20. The ALJ also proposed hypotheticals to the vocational expert that were restricted to light exertional work. R. 62–63. Although the ALJ makes one confusing statement regarding the lifting limitations in the RFC, substantial evidence supports that Plaintiff could perform the lifting requirements of light work. Not only did Plaintiff testify at the hearing that she could lift 20 pounds, but the state agency physicians, whose opinions the ALJ relied on in adopting a light RFC, concluded that Plaintiff could lift up to 20 pounds occasionally and 10 pounds frequently. R. 52, 78, 89. The record does not contain any opinion restricting Plaintiff to lifting less than 20 pounds. Considering the ALJ's decision as a whole, it is clear that the ALJ limited Plaintiff to light work as defined in the regulations. Thus, the Court concludes that the ALJ's mistake in misstating the lifting requirements for light work was a harmless typographical error that does not warrant a remand. *See, e.g., Kevin J. B. v. Kijakazi*, No. 21 C 6781, 2023 WL 3727918, at *7 (N.D. Ill. May 30, 2023) (finding the ALJ's misstatement of the limitations identified in the RFC "was a harmless typographical error and the result would be the same even if the case was remanded for the ALJ to fix his editing error").

**D. Medical Opinion**

Plaintiff argues that the ALJ improperly discounted the opinion of her treating therapist Amanda Musfelt. Plaintiff argues that because the ALJ attributed Ms. Musfelt's letter to her supervisor, Kathy Cox, the ALJ failed to consider Plaintiff's treating relationship with Ms. Musfelt and appropriately evaluate her medical opinion under the regulations. *See* 20 C.F.R. § 404.1520c(c).

The parties do not dispute that in evaluating Ms. Musfelt's April 2022 letter, the ALJ stated that it was authored by Ms. Cox – likely because the letter identified Ms. Cox's name in the letterhead and below Ms. Musfelt's signature. R. 727–28. But as the Commissioner points out, even with a mix-up in authorship,[4] the ALJ did not find the statements in the April 2022 letter to be a medical opinion as defined by the regulations. The ALJ found that "the letter discussed the claimant's difficulties and work during therapy, but it did not provide overall much information with regard to the most the claimant can do on a regular and continuing basis." R. 28.

The social security regulations define a medical opinion as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions." 20 C.F.R. § 404.1513(a)(2). In her reply, Plaintiff does not argue that Ms. Musfelt's letter is a medical opinion under the regulations, such that the ALJ was required to evaluate it pursuant to 20 C.F.R. § 404.1520c(c). Instead, Plaintiff complains that meeting the requirements of a medical opinion is an "impossible standard." Pl.'s Reply at 2, Dkt. 26.

---

[4] The ALJ likely made a scrivener's error in identifying Ms. Cox as the author of the letter. The record indicates that the ALJ knew Plaintiff's treating therapist was Ms. Musfelt, and not Ms. Cox. Plaintiff testified during the hearing that Ms. Cox was Ms. Musfelt's supervisor, and that Plaintiff had never treated with Ms. Cox. R. 45–46. In her decision, the ALJ referred to this testimony and that Plaintiff was currently treating with "Amanda, her current therapist." R. 21.

Regardless, the ALJ also found the letter "not persuasive insofar as it reaches the level of a medical opinion" because although the therapist supported her statements with her treatment notes, it was not consistent with the overall evidence. *See* 20 C.F.R. § 404.1520c(b)(2) (stating that supportability and consistency are the most important factors to consider when evaluating a medical opinion). This included the state agency psychologists' opinions, which the ALJ largely adopted in limiting Plaintiff to unskilled work with reduced social interaction and limitations on judgment and workplace changes. R. 28. No other medical source opined on Plaintiff's functional limitations related to her mental impairments.

Plaintiff's only argument for crediting Ms. Musfelt's letter over the functional limitations provided by the state agency psychologists is that the state agency opinions are "nearly a year to 6 months out of date." Pl.'s Reply at 2, Dkt. 26. But Ms. Musfelt's letter was provided only a month later, in April 2022. Moreover, Plaintiff does not argue that her impairments worsened or that her limitations changed since March 2022 when the latest state agency opinion issued. Thus, Plaintiff has not shown that the ALJ's evaluation of Ms. Musfelt's letter requires a remand. *See Osegera v. Kijakazi*, No. 21-CV-3009-CJW, 2022 WL 4298126, at *9 (N.D. Iowa July 14, 2022), report and recommendation adopted, No. 21-CV-3009-CJW-MAR, 2022 WL 3104766 (N.D. Iowa Aug. 4, 2022) (finding that it was a harmless error for an ALJ to misattribute the author of a medical opinion because "after all, the medical evidence inconsistent with the medical opinion would remain inconsistent").

## IV. Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment is denied, and the Commissioner's motion for summary judgment is granted. The decision of the Commissioner is affirmed.

Date: April 26, 2024        By: _/s/ Lisa A. Jensen_
                                               Lisa A. Jensen
                                               United States Magistrate Judge